ALBERT H. STONE et al., complainants and respondents,

*v.*

JOHN GOSS and the GRASSELLI CHEMICAL COMPANY, defendants and appellants.

[Filed July 23d, 1903.]

1. One who is under an express contract, or a contract implied from a confidential relation, not to disclose a trade secret, will be enjoined from disclosing the same.

2. Others, who induce him to disclose the secret, knowing of his contract not to disclose it, or knowing that his disclosure is in violation of the confidence reposed in him, will be enjoined from making any use of

the information so obtained, although they might have reached the same result independently by their own experiments or efforts.

3. The disclosure necessarily made to the court does not deprive the complainants of their right to an injunction.

On appeal from a decree advised by Vice-Chancellor Stevens.

*Mr. Charles W. Fuller,* for the appellants.

*Mr. Cortlandt Parker* and *Mr. Chauncey G. Parker,* for the respondents.

The opinion of the court was delivered by

Swayze, J.

This is a bill for an injunction to restrain Goss from divulging a secret process of the complainants for the manufacture of depilatories (compounds used to remove hair and wool from skins and hides), and to restrain the Grasselli Chemical Company from using or divulging any information derived from Goss with reference to the secret process. The vice-chancellor advised a decree for the complainants.

Goss was in the employ of the complainants from 1892 to 1901, during which time they had, by constant experiment, made improvements in the manufacture of depilatories and had put upon the market what were called "Stone's XXX Depilatory" and "Stone's XXXX Depilatory." The ingredients out of which the depilatories were made were well known and had been in use for several years before 1892, but the depilatories manufactured had not been entirely satisfactory until the complainants succeeded in producing the XXX and XXXX.

The Grasselli Chemical Company, along with other branches of manufacture, was also engaged in the manufacture of depilatories from the same ingredients used by the complainants, and was their chief business rival. Some time in the year 1901 the Grasselli Chemical Company bought, through one of its agents, some of the complainants' XXX depilatory and caused a chemical analysis to be made, and thereafter conducted experiments

with a view to the production of a depilatory equal in quality to the product of the complainants.

In August, 1901, Goss became dissatisfied with his position with the complainants. He had received a letter two or three months before from Atteaux, a sales agent of the defendant company in Boston. About the middle of August, Goss wrote Atteaux, and by appointment met, at Atteaux's office, Grant, a director of the Grasselli Chemical Company. Goss fixes the date of this interview at about the middle of August, and as he says he gave the complainants eight days' notice that he would leave their employ, and left September 3d, he apparently gave the notice after the interview with Grant. In the second week in September he went into the employ of the Grasselli company, in what was known as the sulphide department, which was the department concerned with the manufacture of depilatories. During the first two or three weeks he was in the employ of the Grasselli company he did no work, but immediately upon his employment Frazier, the superintendent of its plant at Tremley, questioned him "in regard to what he knew about the manufacture of depilatories," and Goss informed Frazier of the complainants' method of manufacture and described fully the complainants' apparatus. Frazier reported to the defendant company the information obtained from Goss, with a sketch of the apparatus and the manner in which it should be made and put up. This sketch was made by Frazier and corrected by Goss. The Grasselli company approved of Frazier's plan and directed him to put up the shed to contain the apparatus. He was proceeding with this work when stopped by the injunction.

The complainants allege that Goss was under a contract with them not to reveal the secrets of manufacture. Goss denies this contract. We agree with the vice-chancellor that the contract is established by the weight of evidence.

The right of a manufacturer, whose goods are made by an unpatented secret process, to protection by injunction against the divulging of his secret in a proper case, is now established by a well-considered line of cases in England and in several states.

The leading case is *Morison* v. *Moat, 9 Hare 241; 20 L. J.*

*Eq. 513,* decided by Vice-Chancellor Turner, in 1851, and affirmed in the court of appeals by Lord Cranworth. *21 L. J. Ch. 248.* The principle has since been applied to cases in various aspects in the English courts. *Merryweather* v. *Moore, 2 Ch. 513; 61 L. J. Eq. 505 (1892)* ; *Lamb* v. *Evans, 3 Ch. 462; 61 L. J. Eq. 681 (1892);* affirmed on appeal, *62 L. J. Eq. 404.*

A leading case in this country is *Peabody* v. *Norfolk, 98 Mass. 452.*

In New York, the principle is established in *Tabor* v. *Hoffman, 118 N. Y. 30; 23 N. E. Rep. 12; Eastman* v. *Reichenbach, 20 N. Y. Supp. 110; National Gum Co.* v. *Braendly, 51 N. Y. Supp. 93; Little* v. *Gallus, 57 N. Y. Supp. 104; Tode* v. *Gross, 127 N. Y. 480; 28 N. E. Rep. 469.*

In Michigan, it was adopted in a very well-considered opinion, in *O. W. Thum Co.* v. *Tloczynski, 114 Mich. 149; 72 N. W. Rep. 140.*

In Pennsylvania, *Fralich* v. *Despar, 165 Pa. St. 24; 30 Atl. Rep. 521.*

In Indiana, *Westervelt* v. *National Paper Co., 154 Ind. 673; 57 N. E. Rep. 552.*

In the federal courts, *C. T. Simmons Medical Co.* v. *Simmons, 81 Fed. Rep. 163.*

The rule has been applied in this state in the court of chancery by Chancellor Runyon, in *Salomon* v. *Hertz, 13 Stew. Eq. 400. Salomon* v. *Hertz, Peabody* v. *Norfolk,* and *Thum* v. *Tloczynski,* are the leading American cases.

These cases establish the principle that employes of one having a trade secret, who are under an express contract, or a contract implied from their confidential relation to their employer, not to disclose that secret, will be enjoined from divulging the same to the injury of their employer, whether before or after they have left his employ; and that other persons, who induce the employe to disclose the secret, knowing of his contract not to disclose the same, or knowing that his disclosure is in violation of the confidence reposed in him by his employer, will be enjoined from making any use of the information so obtained,

although they might have reached the same result independently by their own experiments or efforts. We approve the principle thus established.

We find in this case, as already stated, that an express contract between the complainants and Goss for secrecy is proved. Two questions remain: (1) Did Stone possess a secret process for the manufacture of depilatories? (2) Did the Grasselli Chemical Company obtain knowledge of that secret process from Goss under such circumstances that it should be enjoined from making use of it?

(1) The ingredients used in the manufacture of Stone's depilatories were well known and had been used for that purpose for years before the XXX and XXXX were put upon the market, and the same ingredients were used by the Grasselli Chemical Company in the manufacture of a depilatory. It is urged that the only advantage possessed by the complainants arose out of skill in handling and not out of a secret process, and that there was no secret either in the ingredients or in the method of compounding them. The complainants combined the ingredients by a different method from any other in use and the result was a product of a different character. The complainants' process of manufacture was considerably more complicated than that of the Grasselli Chemical Company. The secret consisted in a knowledge of the proper method of mixing the ingredients and treating them in order to produce a product of proper consistency.

The difference between mere skill in manipulation and a process of manufacture is illustrated by a recent case in the United States supreme court. *Carnegie Steel Co.* v. *Cambria Iron Co., 185 U. S. 403.* In this case the process which was held patentable consisted in retaining a quantity of molten iron in a reservoir to serve as a basis for mixing the varying products of the blast furnaces preparatory to converting the same into steel. The difficulty to be overcome was a lack of uniformity in the molten metal. The use of a reservoir in which the varying products of the blast furnaces had been mixed was known prior to the patent involved in that case, but the importance of

always maintaining in the reservoir a sufficient quantity of molten metal to "dominate," to use the court's expression, the whole mass had not been before appreciated. The majority of the court held that the process was therefore patentable. There the ingredients were the same, the idea of mixing molten metal of different qualities was not new, and the only novelty was the retention in the reservoir of a "dominant mass" sufficiently large to control the average character of the product from time to time. If such an improvement was patentable, it is clear that a process of treating the ingredients, as complicated as that involved in the present case, resulting in a product of novel character, is a process which, if kept secret, is entitled to the protection of the court. The evidence is convincing that the complainants made efforts to keep the process secret and had succeeded until Goss revealed the secret to the Grasselli Chemical Company.

Since we are satisfied that Stone had a secret process of manufacturing a depilatory and that Goss was under a contractual obligation not to disclose the secret, the complainants are clearly entitled to an injunction against Goss. The question remains whether the injunction should go also against the Grasselli Chemical Company.

(2) The evidence satisfies us that the Graselli Chemical Company knew that Stone was manufacturing a superior article to its own; that it had been for some time trying to discover Stone's method of manufacture; that it had entered into correspondence with Goss and employed him while he was still in Stone's service; and that, immediately upon his coming into the employ of the defendant company, it sought, through Frazier, to learn Stone's secret and, having learned it, was about to make use of it to manufacture a similar substance by Stone's process, to be sold in competition with his.

These facts leave no doubt that the Grasselli Chemical Company acted in fraud of Stone's rights in the effort to learn his secret by inducing his employe to divulge the same. Even though they did not know of the contract, they must have known of the confidential character of Stone's business and the confi-

Stone *v.* Grasselli Chemical Co.

dential character of the relations between him and his employes. The defendant company is a party to Goss' fraudulent disclosure of the secret and the complainants were entitled to an injunction restraining the Grasselli Chemical Company from making any use of the information thus obtained from Goss. The injunction should not be refused, because the process was such that it would probably have been discovered by independent experiments in the manipulation of the ingredients of which the products of both parties were alike composed. The Grasselli Chemical Company, by its own conduct, has put itself in such a position that it may even lose the advantage of future independent experiments. It would be quite impossible hereafter to decide how much of the improvement in the product of the Grasselli Chemical Company would be attributable to its own independent efforts and how much to the knowledge of Stone's process fraudulently acquired by it. Every doubt must be resolved against the parties to a fraudulent act. If the defendant thereby suffers, it suffers only by reason of having been a party to Goss' fraudulent disclosure of the secret. The legal principle governing the case is, in effect, the same that was applied by this court to a case of fraudulent intermixture of goods. *Jewett* v. *Dringer, 3 Stew. Eq. 291.*

It was argued in behalf of the appellants that the disclosure of the complainants' secret necessarily made during the trial would render an injunction nugatory. This difficulty was expressed by Lord Eldon in an early case. *Newberry* v. *James, 2 Meriv. 446, 451.* To obviate it as far as possible, the testimony in this case was taken *in camera* and care was taken to print only enough copies of this portion of the evidence to supply the members of the court. It has not been found necessary in this opinion to describe the process, and we see no reason why this disclosure to the court, necessarily made for the purpose of the case, should deprive the complainants of their right to relief. The defendants were already possessed of the secret and they cannot now take advantage of a disclosure made in order to secure relief against them. Such a disclosure is no publication to the world, and although it may endanger the com-

plainants' secret, it does not deprive them of the right to enjoin the defendants from making use of it. The doubts felt by Lord Eldon have not prevented the courts from giving such protection as they could in the later cases cited above. ]

The decree should be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM, GREEN—13.

*For reversal*—None.