GEORGE W. SEIFRIED v. JOHN C. MAYCOX.

1. An employe who is under either an express contract, or a contract implied from the confidential relations existing between him and his employer, not to disclose trade secrets, has no right, after leaving the employment, to disclose or use the same for his own benefit, or to the injury of his former employer.   Injunction will lie to restrain such disclosure or use.

2. An employe may, after leaving his employer's service, lawfully engage in the same line of business as, and in competition with, the latter, and to this end may avail himself of the general knowledge and practice he has acquired while engaged in his former employer's service, which includes the right to canvass for the latter's customers, the names of whom he has learned *bona fide* in the ordinary course of experience in the business; no property rights of the employer are thereby infringed.   But names of customers collected by the employer, or by such employe for him, by special effort and at great expense, which is not such mere information as is supplied by, or can be obtained from, sources open to the public and which are guarded by the employer from competition as far as possible, all of which such employe necessarily obtained by reason of his employment, can not be used by such employe for his own benefit, or to the disadvantage of his former employer.   Such special information is the property of the employer; and while he can not be protected even with respect to these customers as against the ordinary competition of such employe, yet when the latter becomes possessed of his knowledge by virtue of his confidential relations to his employer, and, after leaving his employ, makes use thereof for his own benefit to the injury of his former employer, he is guilty of unfair and unconscionable competition which equity will enjoin.   Hence, where it appears that an employe of a gold and silver refiner was, during his eight or nine years of employment, sent by his employer on extended trips throughout the country to see manufacturing jewelers, jobbers, pawnbrokers, bookbinders, etc., to ascertain their needs as to new supplies, and their custom as to disposing of their refuse products of gold, on the basis of which knowledge so obtained his subsequent trips were so timed as to fit the respective customs in this regard; that these facts were in some instances already known to the employer, but in others were ascertained by the employe as part of his duty owing to his employer; that The information so obtained was such that it could not be ascertained from directories or similar sources of public information;

that he did not, in all cases, report the names thus ascertained to the employer, but that the names reported were entered on the employer's books; in such case, equity will perpetually enjoin such employe from using the names of customers so obtained for his own benefit, or to the disadvantage of his former employer. Whether the information was carried away in memory, or written down, is immaterial.

3. It is not a sufficient basis for affirmative denials in pleadings, for the pleader to affirm ignorance of the matter denied, on the witness stand.

HOSEA, J.

The amended petition in this case alleges that the plaintiff, being engaged in the business of gold and silver refining in Cincinnati, manufactures certain alloys of metals for the use of manufacturing jewelers and others, and has devised certain formulae for the production of gold plate and gold solder for dental use, which formulae differ from those used by others in the business, and are trade secrets of great value to him, and have always been carefully guarded. Also, that in his business relations with customers he has acquired special knowledge as to the character of the refined metal they require and that which they may have to sell; and of the times in each year when they make their sales; and other facts relating thereto, depending on the character of the business of each customer; and that the names and addresses of such customers, together with the said facts, are contained in his books of account, and have been gathered at great expense, and are also trade secrets which he has carefully guarded. It is further alleged that the defendant, who had been for eight or nine years in his employ as clerk and traveling salesman, left his employ a few days prior to the filing of the petition; that while in said employ he committed to memory or copied from plaintiff's books the names and addresses and other facts relating to plaintiff's customers, and also copied from plaintiff's private memoranda the formulae aforesaid in violation of his confidential relations with plaintiff, and is about to establish business of the same character on his own account, or with other persons, and

intends and threatens to use therein said formulae and list of plaintiff's customers and the information recorded therewith, to the irreparable injury of plaintiff, for which he has no adequate remedy at law.

He asks, therefore, an injunction, temporary and permanent, to prevent the threatened invasion of his rights, and mandatory to compel the defendant to deliver up all copies so made by defendant, and for all other proper relief.

A temporary order was granted, as of course, and the defendant having meantime moved to dissolve, it was agreed by parties that answer should be filed and the cause brought on for final hearing upon the merits.

The answer admits the defendant's employment in the service of plaintiff, and that defendant left said employment and intends to engage in similar business on his own account; but denies that plaintiff has devised and invented any formulae for the preparation of gold and gold solder for use as alleged in the petition, and denies that the formulae therefor used by plaintiff are different from those used by others in the business or are trade secrets, but alleges that the formulae used by plaintiff, of which defendant has any knowledge, have been in general use for many years. Defendant denies ever copying any of plaintiff's formulae from plaintiff's books or the names and addresses, or other facts relating to plaintiff's customers; and denies each and every other allegation not specifically admitted.

The testimony shows that the defendant solicited a workman in plaintiff's employ to leave and join defendant in a competing business, declaring that he had copies of all plaintiff's formulae and books and could open the eyes of the plaintiff's customers. He referred particularly to a little book carried by plaintiff in his pocket, saying that he had copies of every formula in it; that he had copies of everything in plaintiff's office—all the formulae, addresses and books. These statements, in substance, were made to the party addressed, openly, in the presence of his wife and sister-in-law, who testified in corroboration.

The defendant admits the interview, and says he opened

it by stating that he understood that the plaintiff intended to place a man over Eith (the party addressed) and he did not know whether Eith would like it; that he asked Eith to join him in business, stating that he (defendant) knew all the customers, and showed Eith that he was thoroughly acquainted; that he knew all the different formulae for alloying the gold; knew the office work; "knew what the customers wanted and could handle them."

He denies having a copy of anything in plaintiff's book (referring to the pocket memorandum book); denies having copies of the formulae; denies knowledge of the formulae used by the plaintiff; and admits that he exaggerated in telling Eith that he knew all the formulae for alloying the gold.

The testimony of the defendant does not correspond with the allegations of the answer. It is not a sufficient basis for affirmative denials in pleading to affirm ignorance on the stand of the subject-matter denied; however, the admissions concerning the details of the interview with Eith and the members of his family, and other statements of the defendant on the stand indicate a want of moral perception of the obligations inseparable from confidential business relations that does not commend itself to the favorable consideration of a court of equity.

The testimony shows that the formulae for gold plate and gold solder for dental use were upon paper slips kept in a private pocketbook by plaintiff and only taken out when weighing and assembling the materials for the alloys, used by himself only and replaced after such use.

These formulae were by consent arrangement exhibited to opposite counsel under agreement of secrecy, and a copy deposited with the court.

Testimony of several dentists and local manufacturers was adduced, showing the state of the art; and on this point I find that the novelty of the combinations indicated is fully and satisfactorily established, and that the combinations of materials and alloys as shown in the formulae were devised and produced by plaintiff as the result of his experience and skill, through experiments undertaken to

the end of producing products embodying certain desirable qualities differing from the products of other manufacturers; and that they were in fact regarded and used by him as trade secrets in his business, and that this fact was fully known to the defendant.

The law governing this branch of the case is well settled. A case decided by the Court of Errors and Appeals of New Jersey in 1903, namely, *Stone* v. *Goss*, 55 Atl. Rep., 736, is perhaps the most exhaustive and satisfactory of recent cases in this country and contains a full review of the English and American authorities, establishing the principle, stated by the court as follows:

"Employes of one having a trade secret, who are under an express contract, or a contract implied from their confidential relations to their employer, not to disclose that secret, will be enjoined from divulging the same to the injury of their employer, whether before or after they have left his employ; and that other persons who induce the employe to disclose the secret, knowing of his contract not to disclose the same, or knowing that this disclosure is in violation of the confidence reposed in him by his employer, will be enjoined from making any use of the information so obtained although they might have reached the same result independently by their own experiments or efforts."

The disclosure of the secret to the court, made necessary by the ordinary exigencies of a trial, was dealt with in that case as I have dealt with it here. The same difficulty arose many years ago in a case before Lord Eldon (*Newbury* v. *James*, 2 Meriv., 446, 451), and this testimony was taken, *in camera*, under the injunction of secrecy upon counsel as officers of the court, as has been done in many cases since Lord Eldon's time.

The leading American cases in support of *Stone* v. *Goss*, *supra*, are *Peabody* v. *Norfolk*, 98 Mass., 452 (followed in 100 Mass., 75); *Florence Sewing Mach. Co.* v. *Sewing Mach. Co.*, 110 Mass., 1, 11; *Ryalls* v. *Mechanics Mills*, 150 Mass., 190, 191 (22 N. E. Rep., 766; 5 L. R. A., 667);

*Thum Co.* v. *Tloczynski,* 114 Mich., 149 (72 N. W. Rep., 140; 68 Am. St. Rep., 469) ; *Westervelt* v. *Paper & Supply Co.,* 154 Ind., 673 (57 N. E. Rep., 552) ; *Salomon* v. *Hertz,* 40 N. J. Eq., 400 (2 Atl. Rep., 379) ; *Tabor.* v. *Hoffman,* 118 N. Y., 30 (23 N. E. Rep., 12; 16 Am. St. Rep., 740) ; and the difference between mere skill in manipulation (as urged in argument in this case) and a process of manufacture which may properly constitute a trade secret, is well exemplified, as against the defendant's contention, in *Carnegie Steel Co.* v. *Iron Co.,* 185 U. S., 403 (22 Sup. Ct. Rep., 698; 46 L. Ed., 968).

The question of confidential relationship, as deducible in the present case, from the nature of the employment, is settled upon principle well expressed by Kekewitch, J. (1892), in *Merryweather* v. *Moore,* 61 L. J. Ch., 505, as follows:

"Where the relation is of pure service, unmixed with any element of apprenticeship, the servant, if his employment necssarily invests him with special information which can be profitably used, has no right, after he has quitted service, to use that information for his own benefit."

So far, therefore, as concerns the power and duty of the court to enjoin the disclosure and use by the defendant of the trade secrets of the plaintiff embodied in the formulae for dental gold and gold solder placed in the hands of the court, the case seems clear and beyond question.

As to the branch of the case relating to the customers, there is more difficulty, arising in part from the state of the law, and in part from the nature of the evidence adduced in the case.

It is shown that the defendant, Maycox, was sent out on extended trips to see manufacturing jewelers, jobbers, pawnbrokers, bookbinders, etc., to ascertain their needs as to new supplies and their customs as to the disposition of their refuse product of gold; and, on the basis of the knowledge thus gained, his subsequent trips were so timed as to fit their customs in this regard.

The question is, whether the knowledge thus gained as

to the sources and general character of supply material, is the general knowledge appertaining to the business, or is special in the sense of establishing special relations with this particular business; and (2) whether, if of the latter character, it has been put into such concrete form as to constitute (as in the case of trade formulae) a tangible property right whose invasion a court of equity can enjoin.

This question is elaborately considered, upon the earlier English authorities, in *Robb* v. *Green,* 2 Q. B. Div., 1 (1895), wherein the defendant, being employed as manager of plaintiff's business, left the employ and set up in a similar business on his own account, and had during his service copied from his master's book of orders the names and addresses of customers, to facilitate his own solicitations, and it was claimed that all the defendant did was justified in law.   Hawkins, J., says:

"As to the third contention" (namely, that, as the obligation of defendant to refrain from such acts was not made part of the written contract of service, it could not be implied), "I have a very decided opinion, that, in the absence of any stipulation to the contrary, there is involved in every contract of service an implied obligation, call it by what name you will, on the servant, that he shall perform his duty especially in these essential respects, namely: that he shall honestly and faithfully serve his master; that he shall not abuse his confidence in matters appertaining to his service and that he shall by all reasonable means in his power protect his master's interests in respect to matters confided to him in the course of his service.   It would be monstrous to suppose that a servant should be absolved from the observance of these essential elements to good service, unless they were in terms especially provided for in the contract."

The court then review at length many earlier cases including that of *Irish* v. *Irish,* 40 Ch. Div., 49, cited by the defendant here, which he distinguishes as not involving the element of designedly preparing the way for "soliciting the customers of his master by breaches of confidence during

his service," and shows by the weight of the English authority the principle of decision to be this: That wherever concrete act is shown during service, designedly to enable the servant to carry away and utilize the information as to customers, etc., that is the property of the master, in the sense that it has been specially gathered, and is not mere information that is supplied by sources open to the public (such as trade directories and the like), the servant may be restrained.

It is said elsewhere in the opinion, that, having left his master, he may lawfully set up in the same line of business and may canvass for his late master's customers, whose names he has learned, *bona fide,* accidentally—which can mean only that general knowledge which any one might obtain in the ordinary course of experience in the business. This is expressed more clearly by Bowen, L. J., in *Helmore* v. *Smith,* 35 Ch. Div., 449, as follows:

"If the acts complained of merely amounted to such fair competition as the business would be liable to experience in the ordinary course they would be unobjectionable."

But, as said by Hawkins, J., in *Robb* v. *Green, supra:*

"The collection together of these names and addresses (*i. e.,* of customers) in the order book was the property of the plaintiff. * * * By making a copy of the order book, defendant was able to canvass at once each of his master's customers without trouble or expense."

And again, in substance, it is said, that not only is his act reprehensible, but it is so, even if the information was carried away in memory and written down elsewhere. "The information," says the court, "is the property of the employer. The mere property in the paper is nothing."

The principle established in these cases is not essentially different from that governing trade secrets. There is a certain amount of general knowledge and general practice in relation to every business which is common, and in which a proprietor can have no property right. Indeed, in

many cases there may be nothing more; and any clerk or employe may avail himself of this with entire freedom when he enters the field in competition. But in others, there is more or less matter of a special nature, gathered, it may be, at great expense, and by special effort, which is guarded as far as possible from competitors. In this class, fall not only secret processes of manufacture, but any special facts in relation to customers, or of a character not generally known or easily ascertainable, which, being ascertained in the course of dealing, are of special advantage to the business and constitute a valuable element of the good will.

A dealer or manufacturer can not be protected, as to the first, against ordinary competition; but as against those who become possessed of special knowledge by virtue of the confidential relations of employment, equity will interfere by its preventive action to forestall a competition that is unfair and unconscionable.

The testimony here, while not in all respects as full and clear as might be desired, shows, nevertheless, that some of the sources of supply of raw material are shops of manufacturers, such as manufacturing jewelers, mirror makers, bookbinders, etc., who accumulate refuse gold, and at certain times, according to their individual circumstances, collect and dispose of it. The defendant has testified to this, and also to the fact that these persons and the facts concerning their business were in some instances already known to his employer, and in other cases ascertained by himself as part of his duty while in the plaintiff's service and under his pay. He also makes it clear that this information couldn't be ascertained from directories or similar sources of public information. He did not in all cases report the names thus ascertained to his employer; but, so far as this was done, the names and addresses were on the books of the business. He also admitted that he knew all the customers, and gives this as a reason why it was not necessary for him to copy the information from the books, and denies having done so.

The names and addresses so entered upon the books,

whether procured by the plaintiff or by the defendant for the plaintiff, fall within the rule of *Robb* v. *Green, supra,* and that stated in *Helmore* v. *Smith, supra,* as follows:

"The servant may resort to fair competition, but if entrusted with important information, viz.: the names of customers of the firm reduced to a list, * * * it is implied in the contract between the master and servant, that such confidential information shall not be used to the master's disadvantage."

Justice Story (2 Story, Equity, Section 952) adopts this doctrine, stated as follows:

"Courts of equity will restrain a party from making a disclosure of secrets communicated to him in the course of a confidential employment. And it matters not in such cases whether the secrets be secrets of trade, or secrets of title, or any other secrets of the party important to his interests." See also High, Injunctions, 1108.

Upon the whole case, therefore, I am satisfied that the plaintiff has established his right to relief as prayed and that the injunction should be made permanent, with such modifications as may be necessary to conform with the views herein expressed, and it is so ordered.

If counsel can not agree upon the form of the injunction order, drafts may be submitted.

Decree for plaintiff, with order for permanent injunction.

*Chas. B. Wilby,* for plaintiff.
*John C. Healy* and *A. L. Herrlinger,* for defendant.