## Newcomer, Admrx., Appellant, *v.* South Fayette Coke Company.

Argued September 25, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*D. M. Hertzog,* with him *F. C. Newcomer,* for appellant.

*Dean D. Sturgis,* with him *Daniel S. Robinson,* for appellee.

OPINION BY MR. JUSTICE KEPHART, November 26, 1934:

This is an action of trespass to recover damages for the unlawful mining of coal lying between the actual crop line and the boundary line as described by courses and distances in the deeds conveying the main body of coal. A compulsory nonsuit was directed in the court below because no damages had been proved.

Appellant conveyed a 9-foot seam of coal to Foote, the descriptions in the deed extending by courses and distances to "the coal crop line," "thence by the coal crop line," etc. Appellee, the present owner of the coal described in this deed, contends that the grantors meant to convey all the coal to the actual outcrop line and not merely the coal within the courses and distances in the deed; that this outcrop line was the real boundary line. Therefore, as appellant had parted with his title, he had no rights in the coal. There is no question about the lines of the various calls closing, or that a body of coal land was sold by the courses and distances mentioned in the deed. To carry the lines beyond these distances by following the coal crop line, appellant contends, would

convey more coal by several acres than was intended. Appellee maintains, however, that the coal crop line is a monument upon the ground to which the calls yield, and all the coal embraced within the call is included within the conveyance. It is quite well known that courses and distances in a deed give way to monuments on the ground.* But this principle is not controlling here for the obvious reason that the coal crop line cannot be regarded as a fixed monument, nor has it been known as such in coal counties.

Outcrop coal is not as valuable as that which has more covering. Sometimes it is soft, of a reddish color, and frequently not marketable. It is customary in coal counties, such as Fayette, to define what the outcrop line may be. Sometimes one line is fixed and sometimes another. A ten-foot covering of soil may be designated or a ten-foot outcrop line. Other coverings or depths may be named. Judge HENDERSON, of the court below, states: "There must be some point in the conveyance where the coal which outcrops is to be cut off, as it were, from the main body of the coal, and when the parties to the contract define this excising line or crop line, which they adopt by courses and distances, it is the line to govern, and the coal outside of that line is not considered as being within the grant." Judge HENDERSON follows the definition of outcrop coal given by Judge MCCONNELL of Westmoreland County, in Fisher v. Pittsburgh Coal Co., 29 D. R. 885. "When coal is bought and sold for mining purposes it is a well-known mode of procedure for the contracting parties to excise from the main body of the coal, . . . the red or less merchantable coal which lies nearest to the points where erosion has carried a portion of the seam away, and that portion which is thus excised is conveniently denominated 'outcrop,' or 'crop coal.' Where the

---

* Lodge v. Barnett, 46 Pa. 477; Pringle v. Rogers, 193 Pa. 94; Miles Land Co. v. Hudson Coal Co., 246 Pa. 11; Myer v. Curry, 291 Pa. 145; Miller v. Cramer, 190 Pa. 315; Hutchison v. Little Four O. & G. Co., 275 Pa. 380.

conventional line of severance to be run is fixed only by agreement . . . it may . . . throw a considerable body of . . . inferior coal into the portion of the bed conveniently called 'outcrop' coal; but, wherever the parties by their convention see fit to locate this excising line, it is not to be legally controverted that the coal—whatever its quality may be—that is located outside of this excising line remains the property of the original owner of the seam, . . ." A coal crop line is not similar to a brook, stone, tree or wall, as a natural monument. It does not have a readily ascertainable divisional status or location, it must be left to the agreement of the parties, or it may become a question of fact. The deed conveyed the coal within the courses and distances. The outcrop coal remained the property of appellant.

This action was instituted in 1920, and owing to different causes its trial was continued. The coal owned by appellant was mined during the years 1917 and 1918, and appellant showed that approximately 21,000 tons of coal had been removed. The method by which the tonnage was arrived at was objected to. After appellee had started mining operations in this territory, and had removed the pillars, the roof caved in and it was impossible for any entry to be made into the area that had been mined out. The engineer for appellant could take only the surface survey; the mining operations during the years 1917 and 1918 were adequately described by the mine foreman.

While appellee urges that the quantity of coal mined was merely an approximation, it is conceded that appellee did mine the coal. This was also a fact proved in the case. The situation on the ground did not permit of an accurate calculation of tonnage, but accuracy was made impossible by the acts of appellee. Therefore, the owner was required to produce only the best evidence of which the case in its nature was susceptible. That evidence was produced and, despite the lack of its precision, it was

some evidence to go to the jury: Michael v. Export Coal Co., 91 Pa. Superior Ct. 364.

It would be manifestly unconscionable to permit a party who has done grievous injury to destroy the proof of the injury, yet demand production of the thing he has destroyed. As stated in Michael v. Export Coal Co., supra, at page 366: "It [the evidence] was not so definite with respect to the time when coal was removed or the exact quantity taken as the appellant contends should have been shown, but in the circumstances exactness could not be expected. If the defendant was a voluntary trespasser on the plaintiffs' property, he cannot be heard to say that the plaintiffs are not entitled to any relief because they have not established, by mathematical accuracy, the measure of their injury. There was fairly definite evidence to support a finding by the jury of a loss for which compensation should be allowed." Appellee removed the coal and converted it into coke. It kept records of its transactions during these years. It knew exactly, or nearly so, how much coal it had mined, and appellant's evidence in this regard constituted a prima facie case which called it to answer.

While the evidence is not entirely clear as to the quantity mined during some of the years, as we read this record, there was very little mining done in 1912, but the coal was principally mined in 1917 and 1918. Appellant is not to be deprived of any recompense for his loss because he is unable to state exactly how much was mined in 1912. We are convinced the jury would be able to judge, and, if necessary, from this evidence, apportion the amount mined during the later years within the statutory period. Courts will not be astute to permit persons who admit they have committed a wrong to escape the consequences of their act because of the lack of nice and precise means of proving the commission of the wrong.

Appellee also urges that no royalty price was fixed. The evidence discloses a wide range of prices from which the jury might properly fix the value of the coal. This

range of value covered a period of two years. Appellee was familiar with the values of the coal during all this time. It could have produced its books to show with greater certainty the price that was paid, as well as the time of mining the coal. We think the trial judge overlooked the most important fact concerning which there was no dispute: appellee mined under this piece of. ground and took this coal away.

Judgment reversed and a venire facias de novo awarded.