**FMC CORPORATION, a Delaware Corporation, Plaintiff,**

**v.**

**William V. SPURLIN, Syn-Energy Inc., a Pennsylvania Corporation, and Eriez Manufacturing Co., a Pennsylvania Corporation, Defendants.**

**Civ. A. No. 83–906.**

United States District Court, W.D. Pennsylvania, Pittsburgh Division.

Aug. 30, 1984.

---

Gerald D. Hosier, Thomas G. Scavone, Hosier, Niro & Daleiden, Ltd., Chicago, Ill., R. Dennis Osterman, Berkman, Ruslander, Pohl, Liber & Engel, Pittsburgh, Pa., for plaintiff.

James R. Walczak, Edward W. Goebel, Jr., MacDonald, Illig, Jones & Britton, Erie, Pa., for Eriez.

Walter J. Blenko, Jr., Buell, Blenko, Ziesenheim & Beck, Pittsburgh, Pa., for Spurlin/Syn-Energy.

## OPINION

SIMMONS, District Judge.

### I. Background.

This case involves the protection of intellectual property: a trade secret. The plaintiff is FMC Corporation. Through its predecessor companies and its Material Handling Division (MHE), located in Homer City, Pennsylvania, FMC has been engaged in the business of designing, manufacturing and selling vibratory feeding equipment[1] since the 1930s.

The defendant, William V. Spurlin, is a former employee of FMC. Hired on June 3, 1946, Spurlin worked in numerous engineering positions and was the Manager of the Engineering Department of the MHE Division when he voluntarily retired on July 1, 1976. Shortly after his retirement, Spurlin began to develop vibratory feeder equipment and to provide consultation services. In early 1977, Spurlin formed the defendant Syn-Energy, a Pennsylvania corporation with its principal place of business in Indiana, Pennsylvania. Spurlin is president and principal shareholder of Syn-Energy.

On December 29, 1977, Spurlin filed a patent application for the "Spurlin Feeder." The application was granted by the United States Patent Office on August 26, 1980. Through Syn-Energy, Spurlin began to market the Spurling Feeder in late 1977 and early 1978. Because Syn-Energy lacked the facilities to produce the Spurlin Feeder on a commercially feasible basis, Spurlin entered into arrangements to have the Spurlin Feeder manufactured and marketed through a local company.

In 1982, Spurlin and Syn-Energy entered into a licensing agreement with the defendant Eriez Manufacturing Company, a Pennsylvania Corporation. Under the licensing agreement, Eriez agreed to manufacture and sell the Spurlin Feeder domestically and in parts of the world not covered by a licensing agreement Spurlin had previously entered in 1980 with a Japanese Company, which sells the Spurlin Feeder in Japan and other Asian countries.

The crux of FMC's claim is that, Spurlin, after his retirement from FMC in 1976, pirated and misappropriated FMC trade secrets to build a new vibratory feeder, the so-called "Spurlin Feeder", which was manufactured and sold by Syn-Energy and Eriez in competition with FMC's vibratory feeders. Following a protracted discovery period, the parties filed cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. By its motion, FMC seeks partial summary judgment on the liability issue of its misappropriation claim. The defendants, Spurlin, Syn-Energy and Eriez, assert that the undisputed facts establish that FMC has no actionable trade secret and move for judgment on that ground. Assuming that the FMC trade secret claim is actionable, the defendants further contend that FMC is barred from recovery by laches and estoppel. In addition, Eriez claims that FMC is barred from relief against it because, assuming FMC's trade secret were pirated by Spurlin, Eriez was a bona fide purchaser for value.

[1] This controversy involves heavy vibratory feeding equipment that employs two vibratory masses, a base and a feeder trough, which are connected by springs and vibrated by an electrically actuated exciter. Vibratory feeders have widespread commercial use in the feeding and conveying of bulk materials—coal, sand, wood chips, or limestone, for examples—at controlled speed rates from large storage piles to transport vehicles, transport conveyors, or to some apparatus for processing or an end use such as a coal furnace.

## II. Discussion.

### a. Misappropriation of Trade Secret.

At the outset, this Court rejects several theories assailing the proprietary nature of the FMC Design Manual advanced by the defendants. FMC claims that its design manual is the compilation and distillation of extensive research and development performed by it over many years. FMC stresses that the FMC Design Manual, which consists of information not generally known to the trade in its assembled form, aids FMC in the design of feeding equipment to meet the specific needs of a particular customer's application and thus gives it a competitive edge in the feeder equipment industry.

The defendants argue that since the FMC Design Manual admittedly contains universally known equations and formulas, and because substantial portions of the manual derive from public sources, the FMC Design Manual cannot constitute a trade secret. The defendants further contend that since the claimed trade secret is the design manual "as a whole", FMC cannot make out a misappropriation claim, as a matter of law, because the defendants have not taken or used the FMC Design Manual "as a whole".

It is undisputed that many segments of the FMC Design Manual derived from public sources and some of its contents is in the public domain and therefore generally known within the trade. This, FMC cannot dispute. FMC contends, however, that its design manual is a "cookbook" which enables it to design products with optimum operating efficiency for specific customer application and that no other source in the industry shows how to combine the data contained in the FMC Design Manual to produce a superior product.

Under the Restatement of Torts definition of a trade secret, which Pennsylvania and other courts have adopted:

[a] trade secret may consist of any formula, pattern, device *or compilation of information* which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, *a process of manufacturing*, treating or preserving materials, a pattern for a machine or other device, or a list of customers .... *A trade secret is a process or device for continuous use in the operation of the business.* Generally it relates to the production of goods as, for example, *a machine or formula for the production* of an article.

Restatement of Torts § 757 comment b (1939) (emphasis supplied). *See also Rohm and Haas Co. v. ADCO Chemical Co.*, 689 F.2d 424, 431 (3d Cir.1982).

Applying the Restatement's definition of a trade secret, several courts have expressly rejected the defendants' theory that simply because many or all elements of a process or compilation of information is long and widely known in the trade, it cannot be the subject of a trade secret. In this regard, the Third Circuit noted in the *Rohm and Haas Co.* case that "even though each and every element of plaintiff's Process is known to the industry, the combination of these elements may be a trade secret if 'it produces a product superior to that of competitors.' " *Id.* at 433, *citing, Sun Dial Corp. v. Rideout*, 16 N.J. 252, 257–58, 108 A.2d 442, 445–46 (1954); *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. 410, 422 (E.D.Pa.1980); *Belmont Laboratories v. Heist*, 300 Pa. 542, 550–51, 151 A. 15, 18 (1930).

In this case, the compilation of well known formulas, equations and other useful information into the form of a design manual, is to be accorded no less protection as intellectual property than the proprietary process used to produce latex paint products in the *Rohm and Haas Co.* case, or the process by which profile and winding machines were engineered and built for producing telephone cord armour in the *Anaconda Co.* case.

■ While many or all of the components of the FMC Design Manual may have derived from basic engineering principals that are well known in the industry, this

Court holds as a matter of law, that if the FMC Design Manual is a unique combination of information which affords FMC a competitive advantage, it is a protectable trade secret.

■ This holding in no way diminishes FMC's burden of proving by a preponderance of the credible evidence that its design manual is an advance over common knowledge and practice in the art, *Greenburg v. Croydon Plastic Co.*, 378 F.Supp. 806 (E.D. Pa.1974), and that the design manual gave it a competitive edge in the feeder equipment industry. *Imperial Chemical Industries, LTD v. National Distillers and Chemical Corp.*, 342 F.2d 737, 742 (2d Cir. 1965). Nor does this holding limit the defendants from demonstrating the contrary.

■ This Court also finds no merit in the defendants' argument that FMC cannot make out an actionable misappropriation claim because the defendants have not taken or used the FMC Design Manual "as a whole." In support of this theory, the defendants point out obvious differences between the Syn-Energy Design Manual and the FMC Design Manual, such as the relative number of pages of each document. The defendants also emphasize the fact that FMC can only demonstrate that sections on each page of the Syn-Energy Design Manual are identical to various sections of the FMC Design Manual, so the defendants could not have taken the FMC Design Manual "as a whole."

The defendants' theory misses the mark. Reduced to its simplest form, the defendants' argument would concede, on the one hand, that to take and use the FMC Design Manual in its entirety constitutes misappropriation, but argue on the other hand, that to take beneficial information from the FMC Design Manual and compose a new design manual is something less than misappropriation. This argument has no sound basis in law or logic.

Pointedly, it is not relevant to FMC's misappropriation claim that each formula, chart, graph or equation Spurlin took from the FMC Design Manual was widely known and in the public domain. What is relevant, is that Spurlin took and used, in whole or in part, the FMC Design Manual to create his own design manual. It is the taking and using of the "cookbook" which constitutes the piracy. That an ingredient or recipe proved useless to the pirateer, makes the claim no less actionable. The law protects the proprietary process, not the component parts, which, as a general proposition, are widely known in the industry.

■ FMC claims that its trade secret, a highly confidential and proprietary design manual, was pirated by Spurlin and used by Syn-Energy and Eriez to design and manufacture the Spurlin Feeder. Under well settled Pennsylvania law, to prevail on a misappropriation of trade secret claim, the complaining party must establish several basic elements: "(1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff." *Rohm and Haas Co. v. ADCO Chemical Co.*, 689 F.2d 424, 429–30 (3d Cir.1982). In addition to these basic elements, Pennsylvania courts have also required a prevailing plaintiff to show that the trade secret was of value to him and important in the conduct of his business, and that the plaintiff had a right to the trade secret by discovery or ownership. *Id.* *See also Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 259, 213 A.2d 769, 775 (1965).

The threshold inquiry in every trade secret case is whether a trade secret exists. To prevail on its motion for summary judgment, the movant must demonstrate on the undisputed facts the existence of an actionable trade secret. "While the question of whether plaintiff possesses a trade secret is ultimately a question of law, there must be a factual predicate for resolving that question." *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. 410, 414 (E.D.Pa. 1980). In a summary proceeding, there

must be an undisputed factual predicate, because the movant is entitled to summary judgment only "if there is no genuine issue as to any material fact . . . ." Fed.R.Civ.P. 56.

■■■ The Court's function is to deny summary judgment where there is a genuine issue as to any material fact. Genuine issues of material fact are not to be resolved by the trial judge merely because both parties have moved for summary judgment. *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882 (3d Cir. 1974). Although a motion for summary judgment may be made by any party in any type of action, summary judgment is ill-adapted to cases of a complex nature involving multiple fact-intensive questions, which usually require the full exploration of a trial. *See* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.15 (2d ed. 1983). Yet the question of whether summary judgment is appropriate must be made on a case-by-case basis. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259, 88 S.Ct. 1575, 1577, 20 L.Ed.2d 569 (1968).

■■■ Without proceeding beyond the first element of the trade secret claim (i.e., whether a trade secret exists), it becomes readily apparent that this case is not susceptible to summary adjudication. According to FMC's version of the facts on this element of the claim, the FMC Design Manual was developed by FMC in the early 1970s at its Research and Development facility. The FMC Design Manual, which contains numerous formulas, charts, graphs, tables, and design parameters, is the result of extensive research and development undertaken by FMC. FMC contends that its Design Manual has been used by it for well over 10 years in the design and manufacture of its feeder lines, thereby giving it a competitive edge in the feeder equipment industry. In fact, claims FMC, until the introduction of the Eriez feeder in 1982, no other domestic competitor was able to produce a feeder with capacities equivalent to FMC's feeders, which obtain a feed rate of 80 feet per minute.

The defendants vigorously contest FMC's claim that the FMC Design Manual produced a new, unique or superior product. The defendants argue, and point to evidence of record, that a number of technical articles and learned treatises, written both before and after the composition of the FMC Design Manual, boast speed rates of up to 100 feet per minute. Moreover, several FMC competitors have advertised heavy duty electro-mechanical feeders with speed rates of 80 feet per minute or more.

Herein lies a genuine dispute as to a material issue of fact: whether use of the FMC Design Manual produces a new, unique or superior product? Hence, on the present record neither party can clearly demonstrate that there exists no material disputed issues of fact. Absent a more concrete factual basis, it is impossible to summarily ascertain whether in fact: 1) FMC's competitors achieved the speed rate advertised; 2) whether the speed rate boasted in articles and treatises were commercially obtainable; 3) or whether FMC dominated the vibratory feeder market despite its competitors' claim of equivalent or superior speed rates. The resolution of these fact questions are central to the determination of whether the FMC Design Manual aided FMC in producing a superior product and thereby giving it an advantage over its competitors.

Typically, disputed issues of fact of this nature pervade the parties cross-motions for summary judgment on the liability aspect of the trade secret claim. Hence, the cross-motions for summary judgment on the trade secret issue must be denied. Moreover, on this record, the Court cannot practically nor prudently ascertain what remaining material facts exist without substantial controversy nor what material facts are actually and in good faith controverted.

Notably, the view of the majority jurisdictions is that the existence of a trade secret is considered to be a pure question of fact. *See Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286 (5th Cir.1978); *Kodekey Electronics, Inc. v. Mechanex*

*Corp.,* 486 F.2d 449 (10th Cir.1973); *Hulsenbusch v. Davidson Rubber Co.,* 344 F.2d 730 (8th Cir.1965), *cert. denied,* 382 U.S. 977, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966). The several remaining elements that make out a misappropriation of trade secret claim are also considered by some courts to be fact-intensive questions. In *Hulsenbusch* the issue of (1) possession by plaintiff of a trade secret; (2) confidential disclosure to the defendant; (3) violation of that confidence or a breach of contract, were all held to be issues of the type normally resolved by a fact-finder after full presentation of the evidence from both sides. *Id.* at 734. Likewise, the degree of secrecy, *K–2 Ski Co. v. Head Ski Co.,* 506 F.2d 471 (9th Cir.1974), and the novelty of an alleged trade secret, *Hamilton National Bank v. Belt,* 210 F.2d 706 (D.C.Cir. 1953), have been held to be questions for the finder of fact. Even in this jurisdiction, where the trade secret issue has been considered by one court to be a mixed question of law and fact, *Anaconda Co.,* 485 F.Supp. at 414, this Court holds that to make a judicial determination in a summary proceeding that a trade secret exists requires a more concrete factual basis than that present in this case.

**b. Is FMC's Suit Barred by Laches?**

■ Spurlin, Syn-Energy and Eriez have also moved for summary judgment on the ground that laches bar FMC's claim. The same basic principles underlying summary judgment in general, govern the propriety of granting summary judgment on the basis of laches. To prevail, the defense of laches must be proven to be legally sufficient and the moving party must clearly establish that there is no genuine issue of material fact, otherwise the motion based on the laches defense must be denied. *See Burke v. Gateway Clipper, Inc.,* 441 F.2d 946 (3d Cir.1971).

■ The basic elements of laches are 1) inexcusable delay in instituting suit; and 2) prejudice resulting to the defendant from such delay. *See Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1258 (3d Cir.1974); *Anaconda Co. v. Metric Tool &*

*Die Co.,* 485 F.Supp. 410, 427 (E.D.Pa. 1980). If laches is asserted by a defendant who is a conscious wrongdoer, he can prevail only if the plaintiff's delay amounts to a virtual abandonment of his rights. *See John Wright, Inc. v. Casper Corp.,* 419 F.Supp. 292, 323 (E.D.Pa.1976), *aff'd in part and rev'd in part on other grounds sub nom., Donsco v. Casper Corp.,* 587 F.2d 602 (3d Cir.1978).

■ The defendants' contention that laches and estoppel bars FMC's complaint can be disposed of readily. Whether FMC is guilty of laches is a factual question which can be resolved in the defendants favor only upon a clear showing that the defendants are entitled to judgment on the undisputed facts. Here again, there in no body of concrete, undisputed facts to support the defendants' laches defense. Contrary to the defendants' assertion, the evidence on this point is contradictory and seriously disputed. Therefore, the defendants' motions for summary judgment on the laches defense are denied.

**c. Eriez's Bona Fide Purchaser Defense.**

Eriez further contends that, assuming Spurlin and Syn-Energy misappropriated FMC trade secrets, Eriez had no notice of FMC's claimed trade secrets and Eriez in good faith paid value for the right to manufacture the Spurlin Feeder.

Liability for improper use of another's trade secret, as adopted by Pennsylvania courts, is defined in Restatement of Torts §§ 757–58 (1939). *See Anaconda Co. v. Metric Tool & Die Co.,* 485 F.Supp. 410, 422–24 (E.D.Pa.1980); *Van Products Co. v. General Welding & Fabricating Co.,* 419 Pa. 248, 258–59, 213 A.2d 769 (1965); *Computer Print Systems Inc. v. Lewis,* 281 Pa.Super. 240, 253–54, 422 A.2d 148 (1980). Under section 757, liability attaches to one who discloses or uses another's trade secret, without a privilege to do so, if:

(a) he discovered the secret by improper means, or

(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him, or

(c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other, or

(d) he learned the secret with notice of the facts that it was a secret and that its disclosure was made to him by mistake

Subsections (a) and (c) are not mutually exclusive. If, for example, Eriez procured Spurlin to make a disclosure in breach of his duty to FMC, Eriez would be liable under both subsections (a) and (c): under subsection (a), because inducing one to commit a breach of his duty is an improper means of procuring a trade secret; and under subsection (c), because of Eriez's knowledge of the breach. *See* Restatement of Torts § 757 comment h (1939). Section 758 governs the liability of a party who innocently learns of another's trade secret.[2]

■■■ Eriez contends that, assuming FMC can make out an actionable trade secret claim, it had no notice that the Spurlin Feeder embodied FMC trade secrets. Eriez asserts that in 1982 it simply contracted with Spurlin and Syn-Energy to manufacture a product, the Spurlin Feeder, which had been on the market for several years. There were no facts, Eriez argues, which could have placed Eriez on inquiry notice to investigate whether the Spurlin Feeder contained FMC's proprietary information.

FMC paints a different picture. Eriez started activities in 1973 to design and manufacture an electro-mechanical feeder. Eriez's efforts were largely unsuccessful. FMC contends, and relies on evidence of record, that Eriez had a long history of attempting to gain intelligence about FMC's electro-mechanical feeders by surreptitious means. After Spurlin's retirement from FMC, Eriez, as early as 1979, initiated contacts and pursued efforts to enter into business arrangements with Spurlin. FMC argues that Eriez was aware of Spurlin's former high-level employment in research and development at FMC and sought Spurlin out as a part of Eriez's scheme to acquire competitive information about FMC's products. In FMC's view, Eriez studiously cultivated its relationship with Spurlin to solve Eriez's long-standing failure in the electro-mechanical feeder industry by acquiring information regarding FMC's feeders.

Here again, Eriez's claim that it innocently learned of FMC's trade secrets is based upon facts which are strenuously contested by FMC. The burden of proving the absence of all material facts rest upon the movant, Eriez. On this record, the motion for summary judgment on Eriez's bona fide purchaser defense must also be denied because Eriez cannot demonstrate undisputed facts establishing that it innocently acquired FMC's trade secrets.

An appropriate order follows.

### ORDER

AND NOW, to wit, this 30th day of August, 1984, after consideration of the briefs and arguments in support of the parties' cross-motions for summary judgment in the above-captioned case, and for

---

2. **Innocent Discovery of Secret—Effect of Subsequent Notice or Change of Position.** One who learns of another's trade secret from a third person without notice that it is a secret and that the third person's disclosure is a breach of his duty to the other, or who learns the secret through a mistake without notice of the secrecy and the mistake,

  (a) is not liable to the other for a disclosure or use of the secret prior to receipt of such notice, and

  (b) is liable to the other for a disclosure or use of the secret after the receipt of such notice, unless prior thereto he has in good faith paid value for the secret or has so changed his position that to subject him to liability would be inequitable.

Restatement of Torts § 758 (1939).

the reasons set forth in the accompanying opinion, it is ORDERED, ADJUDGED, and DECREED that the plaintiff's, FMC Corporation, and the defendants', William V. Spurlin, Syn-Energy Inc., and Eriez Manufacturing Co., motions for summary judgment be and the same are hereby DENIED.